IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 22-cv-556-jdp |

CURTIS JOHNSON and OFFICER WHITE,

Defendants.

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman is currently incarcerated at Waupun Correctional Institution. Helmueller, without counsel, alleges that an officer at the St. Croix County Jail attacked and injured him. I granted Helmueller leave to proceed on a Fourteenth Amendment excessive force claim and a First Amendment retaliation claim against the officer who he says attacked him, Curtis Johnson, and on a Fourteenth Amendment failure-to-intervene claim against Deputy Corey White.

Defendants move for summary judgment. Dkt. 34. Helmueller states that he is abandoning his claim against defendant White, so I will dismiss him the case. I will deny defendants' motion on Helmueller's claims against defendant Johnson because the parties' submissions raise a genuine dispute of material fact over whether Johnson used excessive force against Helmueller.

Helmueller has also filed various motions related to discovery that I will address in this opinion.

MOTION FOR SUMMARY JUDGMENT

**A. Undisputed facts and points of dispute**

Defendants properly objected to many of Helmueller's responses to their proposed findings of fact, the main problem being that Helmueller did not cite to admissible evidence, instead stating his firsthand version of events without any supporting document stating under penalty of perjury that his account was true. I gave Helmueller a chance to fix this problem, *see* Dkt. 57, which he has now done by submitting a document stating that he declares under penalty of perjury that his account is true, Dkt. 58. So I will consider Helmueller's proposed findings that are now properly supported by evidence.

Helmueller was incarcerated at the St. Croix County Jail at various times from 2018 to 2022. Defendants worked for the St. Croix County Sheriff's Department. Defendant Curtis Johnson is a sergeant. Defendant Corey White is a deputy.

This case concerns an incident that occurred on January 24, 2022, during a criminal trial of Helmueller's. During the trial, Helmueller made a number of verbal outbursts. The judge ordered the jury out of the courtroom after Helmueller stated that he fired his lawyer. The judge denied Helmueller's request to fire his attorney and be appointed a new one, and the judge asked Helmueller whether his behavior would be good enough to allow him to stay in the courtroom. Helmueller responded that he would "have [the judge] and the president of the United States shot in the head." Dkt. 45-1 (transcript of Helmueller's trial), at 211. The judge ordered Helmueller removed from the courtroom. Helmueller stated, "You're going to have Johnson arrested for slamming my head on concrete." *Id.* at 212. Johnson, White, and another deputy escorted Helmueller out of the courtroom.

The parties dispute much of what happened next. Because defendants move for summary judgment, I'll start with their version. They say that "[d]ue to the threats" Helmueller had made in the courtroom, Johnson placed his hands on Helmueller's shoulder and arm. Dkt. 51, ¶ 16. In response, Helmueller went limp, refusing to walk or stand on his own. After Helmueller ignored their commands to stand up and walk, Johnson and White carried him out of the courtroom and into a holding area next to the courtroom. Helmueller again yelled that he would have the judge and the president shot in the head and he repeatedly yelled that he would have the officers killed and have their wives killed or sexually assaulted. The officers "placed" Helmueller on the floor of the holding area because he refused to stand on his own. *Id.*, ¶ 21. Helmueller resisted officers' attempts to place restraints on him by keeping his knees tucked underneath his body in a kneeling position. The officers told Helmueller to get on his stomach so that they could place restraints on him; Helmueller didn't comply. Johnson states that because of Helmueller's history of defiance and the security concerns implicated by being adjacent to the courtroom, he decided to use force to place restraints on Helmueller. Johnson used his arm to leverage Helmueller to get him off his knees and onto his stomach. Johnson took Helmueller's left arm and raised it up and toward his head to make him flatten out on his stomach.

Defendants provide Johnson's bodycam video recording events occurring in what they say is the holding area. Dkt. 37-1 (placeholder entry for the video footage). The video starts with Helmueller already on the floor, with officers working to restrain him. Helmueller yelled, "You had no right to slam me on the fucking floor and fucking hurt me." *Id.* at 00:53. He repeatedly loudly asked why Johnson slammed him on the floor or used force on him. The officers brought Helmueller to a standing position and walked him to an elevator. Based on the

3

audio, as they leave the elevator it seems that Helmueller and the officers scuffled, but the video doesn't capture what happened. *Id.* at 3:04–3:18. Helmueller repeatedly states, "That's excessive force." Helmueller also repeatedly uttered racial slurs and threatened to have the officers killed and their wives killed or sexually assaulted.

Helmueller disputes much of defendants' account of the events prior to the bodycam footage. He says that he was "carried out of court." Dkt. 45, ¶ 16. He denies going limp; instead, he "stood on [his] own then Johnson attacked me." *Id.*, ¶ 18. Helmueller was "thrown on the floor and [his] head [was] piledriven into the floor." *Id.*, ¶ 31. He wasn't taken to a holding area but rather into a hallway, into an elevator, and then to the jail. He denied resisting being restrained; he says that he stood on his own and allowed officers to shackle him "even after being attacked." *Id.*, ¶ 21. He says that he was on his side while being shackled, not on his stomach. As for the bodycam video, Helmueller states that the video does not capture Johnson's use of excessive force that is the subject of his claims, and that Johnson slammed him headfirst on the floor before the video starts.

## B.  Analysis

I granted Helmueller leave to proceed on a Fourteenth Amendment excessive force claim and a First Amendment retaliation claim against defendant Johnson, and on a Fourteenth Amendment failure-to-intervene claim against defendant White. Helmueller now states that he is abandoning his claims against White so I will dismiss him from the case.

As for defendant Johnson, I'll start with Helmueller's excessive force claim, which requires him to shows that Johnson's use of force was "objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 395–397 (2015). It is necessary to note the specific scope of the

claims on which I allowed Helmueller to proceed. In his complaint, Helmueller alleged as follows:

> On or about 1-24-2022 I was walking in a hallway while being escorted by Officer[] White and Officer Johnson . . . .
>
> While walking in the direction I was told to I was attacked from behind by Officer Johnson, I was slam[m]ed on my head by Officer Johnson causing significant head trauma . . . .

Dkt. 1, at 3.

Johnson contends that I should grant his motion for summary judgment because he used only reasonable force to place restraints on Helmueller given his resistance, because Helmueller failed to provide admissible relevant evidence in opposing his motion, and because he is entitled to qualified immunity. But in making these arguments Johnson focuses on events occurring *after* the alleged use of excessive force that Helmueller discusses in his complaint, instead discussing events occurring after Helmueller was already taken down to the floor. Johnson's bodycam footage partially captures scuffles between Helmueller and officers after the initial takedown, but those events are not part of Helmueller's complaint and thus are immaterial to Helmueller's claims here.

I have allowed Helmueller to correct the problem of his unsworn opposition materials, and his sworn version of events essentially repeats his complaint: as they left the courtroom, Johnson "attacked" Helmueller while he stood, throwing him to the ground and slamming his head on the floor. In his summary judgment materials Johnson doesn't explicitly dispute the specifics about this part of Helmueller's story, instead relying on the fact that his proposed findings were unsworn, but it is clear from Johnson's account that he denies "attacking" Helmueller or "piledriving" him to the floor. The parties' accounts raise a genuine dispute of material fact over precisely what happened immediately after they left the courtroom. The

bodycam footage cannot resolve that dispute because it doesn't start until after Helmueller was on the floor. And if a jury believed Helmueller's account, that would defeat Johnson's qualified immunity argument, as it is clearly established that it is unreasonable for officers to use plainly gratuitous violence against detainees. *See Kingsley*, 576 U.S. 389. So I will deny defendants' motion for summary judgment on the excessive force claim against Johnson.

I will also deny the summary judgment motion regarding the retaliation claim against Johnson. The transcript of Helmueller's criminal proceeding shows that Helmueller brought up an alleged previous use of excessive force by Johnson. And he alleges that shortly thereafter Johnson attacked him for no reason. A reasonable jury could conclude that Johnson attacked Helmueller because he told the judge about the alleged previous excessive force.

Defendants contend that qualified immunity applies to his claim, arguing that "there is no case law which supports a claim of retaliation when the officer had no idea a grievance was even filed or statements were made during trial." Dkt. 40, at 7. Johnson's argument that he wasn't aware that Helmueller made the statement in open court about Johnson having previously assaulted him is a substantive argument, not a qualified immunity one. But in any event, I will reject it: Johnson states in his declaration that he "was assigned to be present during Inmate Helmueller's trial," Dkt. 36, ¶ 4, and he recounts some of the events in the courtroom, so a reasonable jury could conclude that he heard Helmueller's statement about him. And it is otherwise clearly established that officers can't assault detainees for complaining about prior instances of misconduct. So this case will proceed to trial on Helmueller's excessive force and retaliation claims against Johnson.

To help Helmueller prepare for trial, I will shortly issue a separate trial preparation order that provides detailed information about how trial works and how Helmueller should

prepare. Helmueller should review the trial preparation order carefully and notify defendants'
counsel or the court if he has specific questions about preparing for trial.

One final point about the trial. Records in this court and other courts show that
Helmueller has repeatedly used threatening and abusive language against judges, court staff,
opposing counsel, law enforcement officers, and their families. I dismissed a previous case of
Helmueller's because of his threats to opposing counsel and the court. *Helmueller v. Anderson*,
No. 21-cv-665-jdp, 2023 WL 2525014, at *2 (W.D. Wis. Mar. 15, 2023), *aff'd*, *Helmueller v.
Anderson*, No. 23-1609, 2023 WL 8111459 (7th Cir. Nov. 22, 2023). I told Helmueller that if
he made any other statements that could reasonably be construed as a threat to counsel, this
court, or any other person, I would consider dismissing all of his pending cases as a further
sanction. The record of Helmueller's behavior in his state-court criminal case and on Johnson's
bodycam video gives me further reason to be concerned about Helmueller's behavior at a trial
in this court. I warn him that I will dismiss this case, his other cases, and bar him from filing
further cases in this court if he threatens anyone during the remainder of these proceedings.

OTHER MOTIONS

**A. Authorization for release of medical records**

As he has done in several other of his cases in this court, Helmueller has filed what he
calls a motion to determine the sufficiency of forms that defendants have sent him asking him
to authorize the release of various records from medical providers and the Wisconsin
Department of Corrections. Dkt. 33. But I will deny that motion as moot because Helmueller
states that he signed at least some of the authorization forms and sent them back to defendants,

and defendants have not filed a motion seeking to compel Helmueller to release any records that they believe they need.

## B. Motion to compel discovery

Helmueller moves to compel defendants to turn over (1) additional video of the incident; (2) photographs of his injuries taken the day of the incident; (3) additional officers' reports or other jail records following the incident; (4) his complaints or grievances about the incident; (5) and defendants' disciplinary histories.

In his reply, Helmueller asks for sanctions, stating that counsel lied about Helmueller providing video footage to defendants, submitting requests for admissions in this case, and various other statements. But after reviewing the parties' submissions, I conclude that this dispute is nothing more than counsel confusing Helmueller's submissions from his several different cases in this court against county officials, or otherwise commonplace disputes over the proper scope of discovery. I will deny Helmueller's motion for sanctions.

As for Helmueller's specific requests, defendants' main response is that they do not possess the materials that Helmueller seeks and that they are not the legal custodian of those materials. Under Federal Rule of Civil Procedure 34(a)(1), discovery is limited to materials in defendants' "possession, custody, or control." Generally, in similar cases in this court involving state or municipal defendants, defendants provide the type of discovery requested here as a courtesy to plaintiffs and to avoid having the government entity that employs the defendants receive a torrent of subpoenas. But Rule 34 doesn't require defendants to produce materials merely because they have access to those materials through their employment; the question is whether "the party has a legal right to obtain them," not just the "practical ability" to obtain them. *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotation

omitted); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838–39 (7th Cir. 2014) (citing test for control in *Dexia*). Courts in this circuit have concluded that prison employees are not required to obtain those documents from their employer. *Robinson v. Moskus*, 491 F. Supp. 3d 359, 366 (C.D. Ill. 2020) (Illinois Department of Corrections employees cannot be compelled to produce DOC's documents); *Armour v. Santos*, No. 19-cv-678, 2022 WL 16572006, at *3 (S.D. Ill. Nov. 1, 2022) (same).

So as a general matter, defendant Johnson does not have to obtain and then turn over the material Helmueller seeks. But it would be unusual for a defending party not to have already acquired some of the material that Helmueller seeks, most notably incident reports and medical records from immediately after the incident, which are likely relevant to his claims and Johnson's defenses. And Helmueller states that he has authorized release of his medical records. So if Johnson does possess any of the material that Helmueller seeks, he is required to produce it. I will give Johnson a short time to respond to this order, confirming whether he possesses any of the material Helmueller seeks, and if so, to produce that material. Otherwise, Helmueller will have to seek this material directly from the jail or other entities having control over the items, whether by subpoena or other avenue.

## C. Request for subpoena

Helmueller moves the court to issue him a subpoena to HomeWAV LLC (a company contracting with St. Croix County for inmate communication services) for a January 24, 2022 video call between Helmueller and his mother, which he says will show his injuries from Johnson's excessive force. Dkt. 55. Service of the subpoena does not appear to be an issue, as correspondence that Helmueller submits between his mother and HomeWAV states that the

company will accept service by email. I will grant Helmueller's motion and I will direct the clerk of court to send Helmueller a subpoena addressed to HomeWAV for the production of the video call.

ORDER

IT IS ORDERED that:

1. Defendant Officer White is DISMISSED from the case.

2. Defendant Curtis Johnson's motion for summary judgment, Dkt. 34, is DENIED.

3. Plaintiff's motion for clarification regarding requests for authorization to release records, Dkt. 33, is DENIED as moot.

4. Plaintiff's motion for discovery sanctions, Dkt. 48, is DENIED.

5. Plaintiff's motion to compel discovery, Dkt. 42, is GRANTED in part. Defendant Johnson may have until February 9, 2024, to respond to this order regarding discovery materials in his possession.

6. Plaintiff's motion for issuance of a subpoena, Dkt. 55, is GRANTED. The clerk of court is directed to issue a subpoena to plaintiff as addressed in the opinion above.

Entered January 25, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge