IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

Plaintiff,                                    PRETRIAL ORDER

v.                                                      22-cv-556-jdp

CURTIS JOHNSON,

Defendant.

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, without counsel, contends that defendant Curtis Johnson, a sergeant at the St. Croix County Jail, attacked and injured him. Helmueller brings a Fourteenth Amendment excessive force claim and a First Amendment retaliation claim. Trial is set for March 25, 2024. I will hold a final pretrial conference by video on March 15, 2024, at 10:00 a.m.

This order addresses various pretrial filings, including the parties' motions in limine. Also, I have attached drafts of the introductory jury instructions, voir dire, posttrial instructions, and verdict form in advance of the March 15 conference. The parties must review these drafts and be prepared to raise any objections to them at the conference.

**A. Recruitment of counsel**

Helmueller renews his motion for the court's assistance in recruiting him counsel. Dkt. 96. I'll deny that motion because this is a relatively simple case and Helmueller's submissions in his case, particularly his pretrial submissions, show that he is capable of litigating it himself.

**B.  Motion for contempt**

Helmueller filed a contempt motion, Dkt. 99, against Johnson for failing to comply with my January 26, 2024 order directing him to produce various discovery materials if they were in his possession, Dkt. 60, at 9. In particular, Helmueller believed that Johnson had still failed to produce the entire video footage from after the incident at issue, and Johnson did not directly respond to plaintiff's request or the court's order regarding Johnson's disciplinary records. Johnson offered to send the entire video to plaintiff and the court. Dkt 150. The court ordered him to do so and to respond regarding Johnson's disciplinary records. Dkt. 182. Johnson has responded by submitting a copy of his full bodycam footage (a duplicate of the video already on the record at Dkt. 37) and by stating that there are no disciplinary records to produce. Dkt. 184. There isn't any reason to hold Johnson in contempt; I will deny Helmueller's motion.

**C.  Johnson's motions in limine**

Defendant Johnson has filed ten motions in limine. I'll discuss them in the order that Johnson titled them rather than their position on the docket.

First, Johnson seeks to exclude "golden rule" arguments. Dkt. 100. Helmueller doesn't really oppose this, arguing only that he is concerned about Johnson vaguely seeking to exclude "any other arguments." I will grant the motion; vagueness shouldn't be a problem. Helmueller may not ask the jurors to put themselves in his position for the purpose of determining damages or for any other reason.

Second, Johnson seeks to sequester non-party witnesses. Dkt. 101. Helmueller objects, but he seems to think that he won't be able to call sequestered witnesses. Sequestering means only that witnesses are not allowed in the courtroom to hear other witnesses' testimony.

Helmueller will be able to call each of his witnesses separately to take their testimony. I will grant Johnson's motion.

Third, Johnson seeks to exclude argument about claims that were dismissed at summary judgment. Dkt. 102. Helmueller abandoned his failure-to-intervene claim against Deputy Corey White. Dkt. 60, at 1. Helmueller objects to this request as vague, and states that he may want to argue that Johnson acted so quickly that White had no opportunity to intervene. I'll grant this motion in part: Helmueller cannot present testimony suggesting that White violated his rights by failing to intervene, but otherwise the parties may provide testimony about White's observations and actions during the incident at issue. I expect them to do so—White is on both parties' witness list.

Fourth, Johnson seeks a ruling under Federal Rule of Evidence 609 allowing counsel to ask Helmueller about the title, date, and disposition of his various felony convictions, including reckless homicide, burglary, and others. Helmueller objects. I agree with Johnson that Helmueller's convictions may be used to impeach him on cross-examination under Rule 609. But my practice has been to exclude the details of the convictions as unfairly prejudicial. I will limit Johnson to asking Helmueller only whether he has been convicted of several felonies since 2016.

Fifth, Johnson asks to have four of his witnesses testify by videoconference. Dkt. 113. Helmueller doesn't object. I will grant that motion for the efficiencies that are gained by the use of video testimony. But it is imperative that counsel prepares in advance with the witnesses and the clerk's office to ensure that we obtain this video testimony without delays wasting the jury's time. Counsel must provide paper copies of all exhibits to the witnesses before their testimony.

3

Sixth, Johnson asks to exclude Helmueller, who has no expert witnesses, from providing evidence about his alleged injuries that would require expert testimony. Dkt. 107. In particular, they believe that Helmueller will offer testimony that he felt like his "nose and eye socket had a crack in it" and that he suffered "temporary visual problems." *Id.* Helmueller concedes that he does not intend to introduce any evidence about his nose or other parts of his face being broken or cracked. He otherwise objects, stating that he should be allowed to testify about what he felt and experienced after the incident. I agree: Helmueller may describe his own understanding of his health and his personal experiences during and after the events in question, and he can describe any physical or mental symptoms he experienced. For instance, he would be allowed to testify that he couldn't see straight after the alleged excessive force (if that is indeed true) because that is grounded in his firsthand experience.

Seventh, Johnson seeks to exclude reference to settlement offers or negotiations. Dkt. 104. Helmueller objects, but only to barring only him and not Johnson from using this evidence. I will grant Johnson's motion; both parties are barred from introducing this evidence.

Eighth, Johnson seeks an order directing the parties to disclose the sequence of their witnesses, for ease of preparation and for the sake of efficiency. Dkt. 105. Helmueller does not object other than noting his puzzlement with the request and stating that he does not intend to present irrelevant evidence. I will grant this motion, particularly given that this should only be a two-day trial and we will have to coordinate the timing of the video witnesses. The parties are directed to discuss with each other how they plan to present the witnesses and present their plan at the final pretrial conference.

Ninth, Johnson seeks to exclude evidence of his other wrongful acts. Dkt. 109. Federal Rule of Evidence 404(b) prohibits evidence of a person's prior acts to show that a person has

a propensity to behave in a certain way. But evidence of prior acts may be admissible for other purposes, such as proving a person's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id.* Helmueller states that he wants to present this type of evidence to show "patterns of undisciplined acts of abuse" and to "show the jury who Johnson really is." Dkt. 158, at 2. But barring that type of evidence is precisely the point of Rule 404(b). So in general, Helmueller will not be able to present evidence of other assaults or bad acts by Johnson unrelated to the events of the case.

There is one exception to this ruling. The first is that Helmueller's retaliation claim is based on Johnson harming him as punishment for Helmueller stating in open court that Johnson had previously assaulted him. Helmueller will be able to recount what he said about the prior assault to show Johnson's intent afterward. But I will not allow testimony about the previous assault.

Tenth, Johnson seeks to exclude evidence of him having liability insurance or to bar Helmueller from calling counsel a "defense firm" or "insurance defense firm." Dkt. 108. Helmueller's only objection is that counsel indeed works for a "defense firm." I agree that the evidence is irrelevant, risks prejudice to Johnson, and is otherwise barred by Federal Rule of Evidence 411. Helmueller may not refer to opposing counsel as a defense firm or any variation of that.

## D. Helmueller's motions in limine

Helmueller has filed four motions in limine. They require a bit more discussion than Johnson's motions.

1. **Criminal history/jail incidents**

First, Helmueller seeks to exclude reference to his criminal history and jail disciplinary records referring to prior violent altercations. Dkt. 83. I already discussed Helmueller's criminal record with respect to impeachment under Rule 609. In response to this motion in limine, Johnson says that he needs to introduce evidence of Helmueller's convictions and jail behavior to show (1) his knowledge of Helmueller's dangerousness at the time of incident as a factor relevant to the reasonableness of the force he used; and (2) whether Helmueller had any preexisting conditions for purposes of damages.

Similar to my Rule 609 ruling, I'm inclined to allow only general references to Helmueller's prior actions. Specific details of Helmueller's criminal history and record of violence in jail are more prejudicial than probative because they paint Helmueller either as someone with a propensity to resist or simply as an unlikeable person. Johnson didn't mention Helmueller's criminal record at all in his declaration supporting his motion for summary judgment, Dkt. 36, so I see no reason to allow further inquiry into it.

If Helmueller was known as a particularly resistive or combative inmate, that might have marginal relevance to the reasonableness of Johnson's actions as a security escort during the events of the case. But there is good reason to limit the amount of this evidence to avoid unfairly prejudicing Helmueller. This isn't the type of case where a defendant undisputedly uses extreme force to quell a violent inmate, and the question is whether it was justified. Here the dispute is whether Johnson used more than a minor amount of force at all. At summary judgment, Helmueller said that Johnson attacked him for no reason; Helmueller's criminal or jail history wouldn't justify that attack. Johnson said that he and Deputy White had to carry Helmueller out of the courtroom because he went limp and that they "placed" Helmueller on

the floor because he refused to stand. If a jury believes this version, they don't need the details of Helmueller's crimes or jail altercations to find that it was reasonable to carry a limp or resistive inmate. For now I'm inclined to say that Johnson can only describe in general terms whether he took specific actions because of knowledge about Helmueller's previous behavior. I'll take further argument on this issue at the final pretrial conference.

As for Johnson's assertion that records of other physical altercations are necessary for purposes of damages, I'll distinguish between disciplinary records and medical records. Because I take Helmueller to be saying that he suffered lingering effects from a head injury during the incident at issue, medical records suggesting an alternate cause of those symptoms might be relevant (if Johnson has a witness who can testify about causation of his symptoms, which is a separate issue to be discussed). But disciplinary records showing that Helmueller was punished for prior bad acts are likely more prejudicial than probative. The documents Johnson specifically discusses in his response are at Dkt. 130, and those are all medical and not disciplinary records. We'll discuss objections to exhibits at the final pretrial conference.

## 2. Video footage

Second, Helmueller seeks to mute portions of the bodycam footage immediately following the use of excessive force, after Helmueller was already on the ground and officers restrained him to transport him back to the jail. Dkt. 84. During that video, Helmueller repeatedly uses racial slurs against officers and threatens to have their wives killed or sexually assaulted. Dkt. 37-1 (placeholder entry for that video footage). Alternatively Helmueller seeks to exclude the video entirely as occurring before the excessive force that is the subject of this case, or have the jury instructed about the video capturing events after the alleged excessive force.

Johnson objects to all of Helmueller's proposals, stating that the video and audio helps explain the circumstances facing him at the time of the alleged excessive force, that it shows Helmueller's "demeanor and resistance in general," Dkt. 174, at 4, and that the footage would help disprove that Helmueller was harmed by Johnson—he says that this video shows that Helmueller did not have a head wound, supporting his position that Helmueller actually injured himself later when he scraped his head against the wall.

If the video had captured the alleged use of excessive force, it would be admissible no matter what Helmueller said during it. And anything that Helmueller said preceding the alleged force might also be relevant. But as I stated in my summary judgment opinion, the video captures events *after* the alleged force; it starts with Helmueller already on the floor. Helmueller's statements or actions after the excessive force simply aren't relevant to whether Johnson attacked him. Johnson's argument that the footage shows Helmueller's "demeanor and resistance in general" is really one to allow other acts evidence, which is prohibited.

Thus, I'm not convinced that any of the video needs to be shown, other than to show footage of Helmueller's head for purposes of ascertaining when he sustained a head wound. Audio isn't necessary for that. I agree with Helmueller that his racial and sexual comments should be excluded as improper character evidence.

Nonetheless, both sides seem intent on offering some video evidence in this case. Helmueller has submitted additional video evidence from before his criminal court hearing and after the alleged assault, *see* Dkts. 66 and 141, that appears to be aimed at showing that he didn't have a head wound before the hearing and did afterward. We'll need to discuss the admissibility of that footage at the hearing, and I'll take additional argument on the original footage as well to ensure that the court and the parties are on the same page about the scope

of the case, which is limited to Johnson's alleged assault of Helmueller after they exited the courtroom. The parties should be prepared to propose which specific portions of each video they'd like to show.

### 3. Medical records

Third, Helmueller seeks to exclude "all irrelevant portions" of his medical records. Dkt. 85. He states that the only relevant records are those relating to his injuries during the incident or his refusals to get medical attention. Johnson offers seven specific documents in addition to ones he discussed with regard to Helmueller's first motion in limine. Dkts. 126–129; 131.

Johnson says that each of the records is relevant to show the following:

> (1) Helmueller's tendency to believe that others are trying to attack him; (2) Helmueller's history of non-compliance with orders of law enforcement; (3) Helmueller's knowledge of how to submit requests for medical attention; and (4) Helmueller's pre-existing conditions.

Dkt. 174, at 7.

I'll reject the first two of these reasons. From his various filings in this case and his witness list for trial, I do not take Johnson to be saying that Helmueller is diagnosed as delusional and that he is imagining the alleged attack. So any evidence about a tendency to believe that others are out to get him is irrelevant. And I've already discussed the likely exclusion of specific instances of Helmueller's history of non-compliance.

Conversely, it's appropriate for Johnson to present evidence about Helmueller's knowledge of how to submit medical complaints. And evidence about preexisting injuries might be relevant to damages, because Helmueller suggests that he suffered lingering harm to his

vision and balance. So I will deny his motion for blanket exclusion. We'll discuss the exhibits at the final pretrial conference.

### 4. Exhibits

Fourth, Helmueller makes requests about specific exhibits. He seeks a ruling allowing him to present video footage from three days after the event showing a wound on his face. *See* Dkt. 66-1. Johnson doesn't object, so I'll grant that motion. But we'll discuss each video further at the conference.

Helmueller seeks a ruling allowing him to present emails showing that the jail no longer possessed photos of Helmueller's injuries. Dkt. 56-2. Johnson says that he stipulates to the fact of the jail no longer having the photos. I'll get Helmueller's response to this at the conference.

Helmueller seeks a ruling allowing him to present video footage that he submitted to the court on a compact disc. *See* Dkt. 141. We'll discuss the video further at the conference. Johnson states that Helmueller didn't send him a copy. Johnson should contact the clerk of court to obtain a copy of that and view it before the conference.

Helmueller reiterates his request about muting or excluding the video at Dkt. 37-1, which I've already stated we'll discuss at the conference.

Helmueller seeks a ruling allowing him to present Johnson's (Dkt. 36) and White's (Dkt. 35) declarations, but he appears to withdraw Johnson's declaration as an exhibit, *see* Dkt. 157. Johnson doesn't object to these declarations so long as they are used for a proper purpose. Johnson's declaration is admissible as a statement by a party opponent. White's declaration is also admissible for limited purposes so I'll grant Helmueller's motion. But it is up to him to decide whether to use them.

Helmueller seeks a ruling allowing him to present contemporaneous incident reports by officers. Dkts. 36-1; 37-2; 65-1. Johnson doesn't object so long as they are used for a proper purpose. I'll grant this motion.

**E.  Restraints**

Johnson requests that Helmueller be restrained with a stun belt during trial. Dkt. 176. I will grant that motion.

ORDER

IT IS ORDERED that:

1.  Plaintiff's renewed motion for the court's assistance in recruiting him counsel, Dkt. 96, is DENIED.

2.  Plaintiff's motion for contempt, Dkt. 99, is DENIED.

3.  The parties' motions in limine, Dkts. 83–85; 91; 100–105; 107–109; 113, are GRANTED in part, DENIED in part, and DEFERRED in part as discussed above.

4.  Defendant's motion regarding restraints for plaintiff, Dkt. 176, is GRANTED.

Entered March 11, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge